WILSON, Circuit Judge,
dissenting in part:
Over the course of approximately one week, all four defendants were jointly tried for conspiring to defraud the United States by filing fraudulent tax returns. The four defendants all asserted a single, *860 common defense, which was that each defendant believed in good faith that the conspiracy for which they were charged was, in fact, a legitimate enterprise. Co-defendant Gonzalez withdrew her not-guilty plea and admitted guilt on the fourth day of trial. The district court’s uninvited and erroneous revelation to the jury that Gonzalez had admitted that she conspired to commit an act she knew to be illegal destroyed the concerted defense of the three remaining defendants. This error necessarily implicated the remaining defendants’ guilt because it removed all reasonable doubt as to whether any two defendants knew that their operation was illegal.
Our precedent instructs that, where the guilty plea of one co-defendant necessarily implicates the guilt of another, the introduction of this evidence is harmful and prejudicial error. See United States v. Baete, 414 F.2d 782, 783-84 (5th Cir.1969) (per curiam).[1] Given that these defendants were jointly tried for their alleged involvement in a conspiracy and raised a unified good faith defense that was, in my view, irreparably affected by the erroneous admission of Gonzalez’s guilty plea, I do not believe that the district court’s cautionary instruction sufficiently cured beyond a reasonable doubt the prejudice suffered by the remaining defendants. See id.; see also United States v. Vaughn, 546 F.2d 47, 51 (5th Cir.1977) (reversing and remanding after trial court’s disclosure of co-conspirators’ guilty pleas because “some things are too prejudicial to be cured by the strongest cautionary instruction”); United States v. Fleetwood, 528 F.2d 528, 532 (5th Cir.1976) (“[I]n some instances information pertaining to the guilty pleas of others might so taint the trial of an individual that the error [cannot] be cured despite a cautionary instruction.”). Thus, I would reverse and remand this case.
I.
“Due to the extreme and unfair prejudice suffered by defendants in similar situations [that is, conspiracy cases], courts and prosecutors generally are forbidden from mentioning that a codefendant has either pled guilty or been convicted.” United States v. Griffin, 778 F.2d 707, 710 (11th Cir.1985). Accordingly, as the Majority concedes, the district court erred in revealing to the jury that Gonzalez — a co-defendant and alleged co-conspirator— pled guilty. To determine whether this error was prejudicial, we must look to “the facts and circumstances of the case in their proper context.” Fleetwood, 528 F.2d at 532. Where the error is constitutional in nature, as an appellate court, we “must be able to declare a belief that it was harmless beyond a reasonable doubt.” Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); see also Fleetwood, 528 F.2d at 536 (finding that the court’s error in introducing co-conspirators’ guilty pleas “was not harmless beyond a reasonable doubt”).
A prompt curative instruction may be insufficient to cure the error if there are “aggravated circumstances.” See Baete, 414 F.2d at 783-84. Aggravated circumstances exist when the revelation of the guilty plea necessarily implicates the guilt of a co-defendant. Id. The potential for prejudice — and the corresponding need for vigilant scrutiny in these circumstances— is heightened in conspiracy cases because conspiracy, by definition, “contemplates *861 two or more culpable parties.” Griffin, 778 F.2d at 711.
II.
Looking to the facts and circumstances of this case, as our precedent instructs, I would find that aggravated circumstances exist that render this error — the district court’s uninvited injection of alleged co-conspirator Gonzalez’s guilty plea into the trial — incurable and harmful. Conspiracy, by definition, contemplates two or more parties agreeing to commit illegal acts. See id. In this case, the defendants were all charged with and jointly tried for the same conspiracy, and they even set.forth a unified defense — that they did not know their enterprise was illegal (and thus did not agree to commit any illegal acts). The district court’s revelation to the jury that co-defendant and alleged co-conspirator Gonzalez pled guilty to the conspiracy effectively destroyed the remaining parties’ unified good faith defense and necessarily implicated their guilt (i.e., their knowledge of the illegality of their enterprise). This is clearly prejudicial and harmful. See id. at 710 (noting that, when a trial court informs the jury of a co-defendant’s guilty plea, “[t]he prejudice to the remaining parties who are charged with complicity in the acts of the self-confessed guilty participant is obvious” (internal quotation marks omitted)).
Of course, the Majority, while conceding that prejudicial error occurred, insists that the error is nevertheless harmless due to the district court’s curative instruction and the “strength and nature” of the government’s evidence. But the existence of a curative instruction and the strength of the government’s case against a defendant do not render this error harmless when aggravated circumstances exist. See Baete, 414 F.2d at 783-84; Fleetwood, 528 F.2d at 535. Implicit in our precedent is the general rule that when aggravated circumstances exist, by the very nature of those circumstances, a curative instruction may be insufficient to cure prejudicial error resulting from the disclosure of a co-defendant’s guilty plea in a conspiracy. See, e.g., Baete, 414 F.2d at 783-84 (suggesting that, in the absence of aggravated circumstances, we may consider whether a curative instruction sufficiently cures any harm to the defendant).
Instead, the Majority’s conclusion is rooted in those cases in which we have recognized exceptions to the general rule that this sort of error requires reversal. One such exception applies to situations where the error was invited by the defendant or was part of the defendant’s deliberate trial strategy. See United States v. Handly, 591 F.2d 1125, 1130 (5th Cir.1979) (“[Pjrosecutors should avoid making improper references to the guilty pleas of coconspirators, for the potential prejudicial effect that such comments can have is tremendous, and the situation encountered in this case, where defense counsel’s independent choice to use that information in his trial strategy is obvious from the record and dispels the claim of prejudice, would appear to be the exception rather than the rule.” (emphasis added)); United States v. King, 505 F.2d at 608-09 (5th Cir.1974) (finding no reversible error because the defense counsel “injected” the prejudicial evidence into the case and the testimony was restricted to informing the jury of the government witness’s prior criminal background); United States v. Carrazana, 921 F.2d 1557, 1568 (11th Cir.1991) (finding, in the absence of aggravated circumstances, cautionary instructions sufficed where the court advised the jury of the co-defendants’ guilty pleas at the request of and according to an instruction prepared by the defense). In these circumstances, the defendant is deemed to *862 have waived a claim of reversible error.[2] See, e.g., King, 505 F.2d at 608-09. However, in this case, neither the Majority nor the government asserts that the defendants invited the error at issue here.
Moreover, even in those cases where a claim of prejudice may have been waived due to the actions of the defense counsel, the resultant prejudice to the defendant may be too harmful to overlook. In Fleet-wood, a case relied on by the Majority, the defense opened the door to the prejudicial testimony of the government’s witnesses as part of its trial strategy. See 528 F.2d at 533. The prejudicial testimony concerned the guilty pleas of individuals who were not currently on trial with the defendant. Id. at 530, 532. Even with “solid evidence” of the defendant’s guilt, and circumstances that were arguably less aggravated, we nevertheless concluded that the reversible circumstances contemplated by Baete existed — despite mitigating facts, such as that the defense invited the error and never requested corrective instructions. See id. at 535-36 & n. 16 (“This is one of the examples anticipated by Baete. We doubt that any instruction, had one been given, would have cured the prejudicial impact of the testimony presented.”). Our review of the facts and circumstances in their proper context resulted in our conclusion that the introduction of the co-defendants’ guilty pleas and “repeated” questioning of the government’s witnesses as to the same “so taint[ed] the trial of [the defendant] that the error could not be cured.... ” Id. at 535. Thus, given the circumstances in Fleetwood — and despite the potentially mitigating facts — reversal was warranted.
In comparison, here, the error was uninvited by defense counsel; it was not part of the defense counsel’s trial strategy and indeed ran counter to the unified defense theory. The district court sua sponte introduced the plea of a co-conspirator to the conspiracy: what Gonzalez pled (guilty) and what she pled guilty to (the conspiracy charge). Further, in Fleetwood, the guilty plea at issue was from witnesses who were not .alleged to have been members of a conspiracy for which the defendant was being tried, whereas this case involves the guilty plea of an individual charged with the same crime as the remaining defendants.[3] See id. These circumstances are surely more prejudicial and harmful than those in Fleetwood, and I fail to see why reversal was warranted there but not here.
Indeed, in a case where the district court introduced the error, we concluded that reversal was warranted. In Vaughn, a conspiracy case, the trial court told the jury at the outset “that some of the co-indictees had pled guilty.” 546 F.2d at 50. The court’s disclosure “thus solemnly confessed] the existence of the conspiracy and their participation in it.” Id. There, as here, the court gave a curative instruction, “wam[ing] the jury ... that the pleas had nothing at all to do with the guilt or innocence of the defendants about to go to trial.” Id. Nevertheless, on appeal, the curative instruction was deemed insufficient. As the court discussed,
Did the warning that [the jurors] were not to consider these pleas remove any *863 reasonable likelihood of harmful prejudice? It is an accepted maxim that juries are presumed to follow the instructions of the Court. This presumption, however, is not water tight, because we have often held that some things are too prejudicial to be cured by the strongest cautionary instruction.
Id. at 51. I would find that similar harmful prejudice exists in this case. Here, the defendants maintained a unified defense— their sole defense to the conspiracy charges against them — which was that they did not know their actions were illegal. The subsequent destruction of that defense by the district court’s uninvited revelation that one of the co-conspirators pled guilty — admitting “the existence of the conspiracy and [her] participation in it” — renders this case “too prejudicial to be cured by the strongest cautionary instruction.” See id. at 50, 51.
The Majority, however, attempts to distinguish Vaughn because of “the nature of the fraud here, and the strength of the Government’s evidence.” Maj. op. at 848. But “[a]n error may substantially influence an outcome and thus warrant reversal even if the evidence, had no error occurred, would have been sufficient to support the conviction.” United States v. Hands, 184 F.3d 1322, 1329 (11th Cir.), corrected, 194 F.3d 1186 (11th Cir.1999) (discussing the harmless error standard in the context of erroneous evidentiary rulings)., Gonzalez’s concession of guilt as to the conspiracy charge was damning proof that at least two defendants agreed to commit an act that they knew was illegal. The existence of such an agreement was a crucial element of the charged conspiracy, and the,knowledge of its illegality was the linchpin of the defendants’ unified good faith defense. Indeed, we have recognized that where state of mind is at issue, the only possible direct evidence thereof is an admission by the individual with whose state of mind we are concerned. See Wright v. Southland Corp., 187 F.3d 1287, 1295 & n. 9 (11th Cir.1999). For this reason, the concession of guilt by one of the co-conspirators (and erroneous admission thereof) is particularly problematic. It served as direct evidence of the existence of the conspiracy and circumstantial evidence of the involvement of others in the conspiracy; specifically, proof of the defendants’ state of mind (agreement and knowledge of illegality). Accordingly, direct evidence that Gonzalez and at least one other defendant agreed to commit an act they knew to have been illegal — provided by the district court’s introduction of Gonzalez’s guilty plea — allowed the jury to look to circumstantial evidence to determine which defendant(s) — in addition to Gonzalez — was a member of the conspiracy.[4] See Harrell, 436 F.2d at 614 (“Jurors equally with others are aware that ‘it takes two to tango.’ ”).
And while the Majority dismisses the defendants’ good faith defense as “preposterous” and “nonsensical,” this characterization of the defendants’ defense does not persuade me that the error here was *864 harmless. Those are determinations best left to the jury, and there is no way for this court to determine whether the defense would have been rejected by an untainted jury. See Vaughn, 546 F.2d at 51 (noting that our role is constrained to deciding the matter consistently with our existing precedent because it was not possible to know whether a corrective instruction removed any likelihood of prejudice to the remaining defendants). As an appellate court, we must “simply decide the matter consistently -with existing precedent.” See id. Here, that precedent compels reversal. See id.; see also Fleetwood, 528 F.2d at 535; Griffin, 778 F.2d at 711.
III.
In this case, the district court’s erroneous mid-trial revelation that an alleged co-conspirator pled guilty conceded the existence of the conspiracy and implicated each of the remaining defendants in it. The court’s uninvited error wiped out the remaining defendants’ unified, good faith defense, and such prejudice could not reasonably be cured by a subsequent instruction. The die had been cast. See Griffin, 778 F.2d at 711 (“In a conspiracy trial, which by definition contemplates two or more culpable parties, courts must be especially vigilant to ensure that defendants are not convicted on the theory that guilty ‘birds of a feather are flocked together.’ ” (quoting Krulewitch v. United States, 336 U.S. 440, 454, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring))). Given these aggravated circumstances, the error is too prejudicial to be considered harmless beyond a reasonable doubt.
Therefore, I respectfully dissent.

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981. Therefore, this court uses the term "we” to refer to both the former Fifth Circuit and the current Eleventh Circuit.

. Similarly, the permissible introduction of a co-defendant's guilty plea for limited legitimate evidentiary purposes — such as when it may be necessary to impeach trial testimony or to challenge the credibility of a witness — is not before us.. See United States v. Harrell, 436 F.2d 606, 614 (5th Cir.1970).

. Additionally, although the defendants' counsel did not contemporaneously object to the district court’s disclosure, which they argue .was "the result of tactical considerations" to avoid further prejudicing their clients, see Fleetwood, 528 F.2d at 532, they did move for a mistrial on this basis.

. For this reason, co-defendant Rodriguez’s acquittal does not convince me that the error was harmless. Given that the government had very little evidence to establish that Rodriguez was involved in the charged conspiracy at all, it is not surprising that he was acquitted. Thus, the fact that Rodriguez was acquitted simply establishes the lack of evidence of participation in the conspiracy as to Rodriguez; it does not address or diminish the potential for harmful prejudice as to the other coconspirators. See Vaughn, 546 F.2d at 50 (noting that the existence of additional evidence “does not erase the issue of whether this jury would have believed the government’s testimony had it not known from the beginning that various co-indicted confederates had judicially confessed the existence of the conspiracy and their participation in it”).